IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Simpson Plastering, LLC, | ) Civil Action No. 2:16-3439-RMG |
| Plaintiff, | ) |
| v. | ) **ORDER AND OPINION** |
| Skanska/Trident, *et al.*, | ) |
| Defendants. | ) |

This matter is before the Court on Defendants' motion to dismiss. Defendants seek dismissal of Plaintiff's second, third, fourth, fifth, and seventh causes of action. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

I. **Background**

Plaintiff Simpson Plastering, LLC provided manpower for interior and exterior plastering at the Gaillard Center Project in Charleston (the "Project"). (Dkt. No. 11 ¶ 23.) Defendant Skanska/Trident, a joint venture partnership between Skanska USA Building, Inc. and Trident Construction, LLC, contracted with the City of Charleston to serve as the construction manager at risk[1] for the Project on January 25, 2011. (*Id.* ¶ 12.) Defendants Zurich American Insurance Company, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company, Federal Insurance Company, the Continental Insurance Company, Travelers Casualty and Surety

---

[1] Simpson alleges Skanska/Trident was the Project's general contractor. (Dkt. No. 11 ¶ 12.) Skanska/Trident asserts that it was a construction manager and not a general contractor. Although allegations typically are assumed true when considering a motion to dismiss, it does appear that Skanska/Trident was contracted as construction manager at risk on the Project. *See, e.g.*, Gailliard Performance Hall Foundation, *Contractor's Goal: On Time, on Budget, and Being a Good Neighbor* (Sept. 5, 2012), http://www.gaillardfoundation.org/latest-news/contractors-goalon-time-on-budget-and-being-a-good-neighbor/. The distinction between a general contractor and a construction manager at risk is immaterial to the Court's consideration of the present motion.

Company of America (together, the "Sureties") issued a payment bond for the Project. (*Id.* ¶ 13.) Skanska/Trident allegedly subcontracted Defendant Horus Construction of NC, Inc. for interior and exterior plastering at the Project. (*Id.* ¶ 14.) Defendant GPM, Inc. contracted Simpson to provide manpower for plastering at the Project. (*Id.* ¶ 15.) Simpson alleges GPM is an alter ego of Horus. (*Id.* ¶ 16.)

Simpson alleges that it provided manpower for the Project under its contract with GPM and that Skanska/Trident directly paid Simpson $1.7 million by means of checks payable jointly to Horus and Simpson, but that Skanska/Trident did not pay the final amount due of $225,399.96. (*Id.* ¶ 26.) Simpson brings the present action to recover that amount, plus damages and fees. According to Simpson, Skanska/Trident has refused to pay because of a dispute regarding Simpson's warranty obligations. (*Id.* ¶ 61–63.)

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses. . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

-3-

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

Simpson asserts a statutory cause of action for attorneys' fees (first cause of action) and six different theories of recovery for the $225,399.96 allegedly due: injunctive relief (second cause of action), quantum meruit (third), conversion (fourth), declaratory judgment (sixth), payment bond action (seventh), and breach of contract (eight). Simpson also seeks an equitable accounting of all Project monies and assets (fifth cause of action). Defendants deny Simpson's entitlement to relief and move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure of all asserted causes of action except the causes of action for attorneys' fees, declaratory judgment, and breach of contract.

### A.   Second Cause of Action – Lien on Contract Funds

In its second cause of action, Simpson seeks a declaratory ruling that under South Carolina Code § 29-7-10, Simpson is entitled to a first lien on funds received by Skanska/Trident for the construction of the Project and an injunction directing Skanska/Trident to pay Simpson $225,399.96. South Carolina Code § 29-7-10 provides that "laborers, as well as all subcontractors and persons who shall furnish material for [the erection, alteration, or repair of a] building, shall have a first lien on the money received by such contractor for the erection, alteration, or repair of such building in proportion to the amount of their respective claims." The lien is against the money

paid by the property owner to the prime contractor. *Lowndes Hill Realty Co. v. Greenville Concrete Co.*, 93 S.E.2d 855, 865 (S.C. 1956). Laborers asserting the lien need not be employed by the contractor who receives the money. *C.R. Meyer & Sons Co. v. Custom Mech. CSRA, LLC*, 773 S.E.2d 361, 364 (S.C. Ct. App. 2015). Any unpaid laborer who worked on the building may be entitled to a lien on funds paid by the owner to the prime contractor for the building project. *Id.* Simpson has alleged facts sufficient for a plausible claim to a first lien under S.C. Code § 29-7-10 against monies Skanska/Trident received from the City of Charleston. Indeed, Defendants' memorandum in support of its motion to dismiss presents no arguments to the contrary, instead arguing only that Simpson is not entitled to injunctive relief.

In addition to a declaratory ruling that it has a lien on project funds, Simpson seeks an injunction ordering Skanska/Trident to pay the amount Simpson claims is due. "An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc.*, 603 S.E.2d 905, 907–08 (S.C. 2004). The plaintiff must establish, *inter alia*, that it would suffer irreparable harm if the injunction were not granted and that there is an inadequate remedy at law. *Id.* Generally, harms reparable by an award of money are not irreparable harms. *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). And generally, a party may not obtain injunctive relief where it is claiming a loss that can be adequately remedied at law by an award of money damages. "Yet, even where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant 'intended to frustrate any judgment on the merits' by 'transfer[ring its assets] out of the jurisdiction,'" *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985), or is judgment-proof, *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006), or in other extraordinary

-4-

circumstances. In such circumstances, injunctive relief operates "to preserve the plaintiff's opportunity to receive an award of money damages at judgment." *See Hughes Network Sys.*, 17 F.3d at 694.

Here, Simpson seeks an injunction to recover a sum certain allegedly due on a contract plus fees and money damages related to Defendants' purported failure to tender that sum. Money damages awarded in a judgment are usually an adequate remedy for a failure to pay a contractual debt. Simpson therefore must show that injunctive relief is necessary to preserve the opportunity to receive a judgment for money damages. Simpson, however, alleges only that Skanska/Trident may otherwise utilize monies due Simpson, an allegation true in nearly any action to collect a contractual debt. Simpson has not plausibly pleaded any allegation that Skanska/Trident is judgment proof, that Skanska/Trident intends to transfer assets to frustrate judgment, or that injunctive relief is otherwise essential. The Court therefore grants the motion to dismiss as to the claim for injunctive relief in the second cause of action, but denies it as to the claim for a declaratory ruling that Simpson is entitled to a lien on project funds.

### B.  Third Cause of Action – Quantum Meruit

Simpson also seeks payment from Skanska/Trident on a theory of quantum meruit. Quantum meruit requires (1) a benefit conferred upon the defendant by the plaintiff, (2) realization of that benefit by the defendant, and (3) defendant's retention of the benefit such that it is unjust for defendant to retain it without paying its value. *Williams Carpet Contractors, Inc. v. Skelly*, 734 S.E.2d 177, 180 (S.C. Ct. App. 2012). Simpson alleges that its services on the Project benefited Skanska/Trident as construction manager for the Project and that Skanska/Trident has realized that benefit, and that it is unjust for Skanska/Trident to retain that benefit without payment. (Dkt. No. 11 ¶¶ 43–48.)

Defendants argue Simpson cannot assert a quantum meruit claim as a matter of law, because an express contract (with GPM) encompasses payment for Plaintiffs' services. (Dkt. No. 17-2 at 7–8.) Defendants' argument is without merit. Where services rendered "are encompassed within the terms of an express contract which has not been abandoned or rescinded, the plaintiff may not recover under quantum meruit. . . . Case law bars *recovering* under both theories." *Williams Carpet Contractors*, 734 S.E.2d at 181 (emphasis in original). There is no rule against *pleading* under both theories: "A breach of contract claim and quantum meruit claim can be alternative rather than inconsistent remedies." *Id.* Recovery under breach of contract is preferred to recovery under quantum meruit where there is an express contract covering services rendered because the recovery for those services should be the contractually agreed amount rather than an amount determined in equity, not because contracts bar quantum meruit claims. *See Johnston v. Brown*, 348 S.E.2d 391, 395 (S.C. Ct. App. 1986), *rev'd on other grounds*, 357 S.E.2d 450 (S.C. 1987) ("While a recovery may be had in quantum meruit for services fully performed under an express contract,[ ] the plaintiff's recovery is limited to the amount the parties agreed should be paid for the services."). The Court therefore denies the motion to dismiss as to the third cause of action.

C.    **Fourth Cause of Action – Conversion**

Simpson also alleges Skanska/Trident converted funds paid by the City of Charleston that were intended for payment to Simpson. (Dkt. No. 11 ¶¶ 50–52.) Defendants argue Simpson has not stated a claim for conversion because Simpson only seeks payment of a debt (and damages from alleged nonpayment). The Court agrees. "Money may be the subject of conversion . . . [h]owever, there can be no conversion where there is a mere obligation to pay a debt. Thus, where there is merely the relationship of debtor and creditor, an action based on conversion of the funds representing the debt is improper." *Owens v. Andrews Bank & Tr. Co.*, 220 S.E.2d 116, 119 (S.C.

-7-

1975). In other words, failure to pay an amount due under a contract is not tortious conversion, because "[c]onversion is the unauthorized exercise of ownership over the personal property of another." *See Richardson's Rests., Inc. v. Nat'l Bank of S.C.*, 403 S.E.2d 669, 672 (S.C. Ct. App. 1991). Conversion applies to money only when "there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff." *Id.*

Simpson misapprehends the rule that conversion does not arise from the mere obligation to pay a debt as applying only when the debtor did not act improperly, observing that courts have allowed conversion actions regarding money where the defendants acted wrongly. (*See* Dkt. No. 19 at 9.) Generally, a party found liable to another party is said to have acted improperly, and the mere fact that the plaintiff won a case is not an analytically useful distinction. The cases Simpson cites in support of its position are more usefully distinguished in seeking recovery of the plaintiffs' own money contributed or deposited with the defendants, rather than payment of a debt owed for the plaintiffs' services. *See Owens*, 220 S.E.2d at 119–120 (S.C. 1975) (holding it conversion when a bank withheld a check for the balance of a closed account from a plaintiff to pressure her husband regarding his unrelated obligations); *Mullis v. Trident Emergency Physicians*, 570 S.E.2d 549, 550–51 (S.C. Ct. App. 2002) (holding a physician's equity contribution to a partnership had been converted).

Had Simpson invoiced the City of Charleston, had the City of Charleston given funds in payment of those invoices to Skanska/Trident for delivery to Simpson, and had Skanska/Trident instead taken those funds for its own use, then Simpson might have a claim for conversion. But Simpson has not alleged anything suggesting the City of Charleston identified specific funds for delivery to Simpson by Skanska/Trident. Instead, Simpson only alleges that the City of Charleston "intended" Skanska/Trident to pay Simpson. (Dkt. No. 11 ¶ 50.) That the City of Charleston

presumably intended, in a general sense, for its payments to Skanska/Trident to cover Skanska/Trident's costs, which include employees, vendors, and subcontractors, does not somehow convert Skanska/Trident's revenues into a constructive bailment and every contract action brought by Skanska/Trident's employees, vendors, or subcontractors into a conversion action. Because a conversion action does not arise from the obligation to pay a debt owned for services rendered, which is precisely what Simpson alleges here, the Court grants Defendants motion to dismiss Plaintiff's conversion claim.

**D.      Fifth Cause of Action – Equitable Accounting**

Simpson also seeks "a full accounting of all monies and assets obtained by Skanska/Trident on the Project." (Dkt. No. 11 ¶ 59.) "The equitable remedy of 'accounting' . . . refers to 'an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due.'" *Historic Charleston Holdings, LLC v. Mallon*, 673 S.E.2d 448, 453 (S.C. 2009) (quoting 1 Am. Jur. 2d Accounts and Accounting § 52). Where there is no fiduciary relationship, an accounting is usually appropriate only where there is a need to discover the amount due. *See, e.g., Consignment Sales, LLC v. Tucker Oil Co.*, 705 S.E.2d 73, 77 (S.C. Ct. App. 2010) (finding accounting appropriate where "[defendant] was in exclusive control of the information needed to determine the amount [plaintiff] is owed"). By contrast, "[a]n accounting is not available in an action where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." 1 Am. Jur. 2d Accounts and Accounting § 52. Here, Simpson alleges the right to recover a sum certain: A principal amount of $225,399.96 (merely 0.2% of the payment bond) for services rendered under a contract. (*See* Dkt. No. 11 ¶ 26.). Simpson's claims, if proven, will be fully satisfied by payment of that sum and, possibly, additional amounts arising from the failure to pay as agreed. Simpson has not alleged any facts suggesting it has a right to a full

accounting of the finances of the entire project. The Court therefore grants the motion to dismiss as to fifth cause of action.

### E.   Seventh Cause of Action – Payment Bond Claim

The Sureties provided a $110 million payment bond for the Project. (Dkt. No. 11-1.) Simpson sues on that payment bond, alleging that it provided the proper notice under the terms of the bond yet the Sureties have refused to pay its claim. (Dkt. No. 11 ¶¶ 67–70.) Defendants argue Simpson is a third-tier subcontractor and, as such, is too far removed from the payment bond to assert a claim on it. Defendants' argument is without merit. The payment bond defines "claimant" to include (1) anyone with a direct contract with the Skanska/Trident, (2) anyone with a direct contract with any subcontractor of Skanska/Trident, and (3) anyone who "has rightfully asserted a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located." (Dkt. No. 11-1 at 3.) South Carolina Code 29-5-20 states, "Every laborer, mechanic, subcontractor, or person furnishing material for the improvement of real estate when the improvement has been authorized by the owner has a lien thereon . . . to the value of the labor or material so furnished, including the costs of the action and a reasonable attorney's fee . . . ." Simpson has alleged that it provided notice of its claim to Skanska/Trident. (*See* Dkt. No. 11 ¶¶ 29); *cf.* S.C. Code § 29-5-20(B) (requirements of notice). Simpson is, therefore, a claimant on the bond, if it proves its allegations.

Simpson's opposition devotes two pages to argument based on South Carolina Code § 11-35-3030(2)(c), South Carolina's "little Miller Act" governing state construction contracts, which expressly provides a right of action on a payment bond for a "remote claimant" who has furnished labor to a bonded contractor or his subcontractors, if timely notice is given. (Dkt. No. 19 at 11–13.) However, that statute does not appear to apply to contracts with the City of Charleston. *See* S.C. Code §§ 11-35-40 (act applies only to governmental bodies as defined in the act), 11-35-

-9-

310(18) ("governmental body" excludes municipalities). The City of Charleston, not a "governmental body" as defined in South Carolina Code § 11-35-310, contracted with Skanska/Trident for the construction of the project. (Dkt. No. 11 ¶ 12.) No party has cited any statute or other authority that appears to preempt the definition of "claimant" provided in the text of the payment bond itself.

Moreover, even when assuming (without deciding) that a statute allowed only those with a direct contractual relationship with a contractor or subcontractor—but not with a sub-subcontractor—to sue on a payment bond, South Carolina courts have found a direct agreement with the subcontractor where the subcontractor "paid [the plaintiff] directly for materials used on the project" and "agreed to be responsible for direct payment to [the plaintiff]." *Moore Elec. Supply, Inc. v. Ward*, 450 S.E.2d 96, 99 (S.C. Ct. App. 1994). Here, Simpson has alleged Skanska/Trident entered into joint check agreements, under which Skanska/Trident paid Simpson directly. (Dkt. No. 11 ¶¶ 25–26.) Simpson has alleged facts that may establish a direct agreement (for payment bond purposes) with Skanska/Trident to provide labor for the Project.

Finally, Simpson has plausibly alleged that GPM is an alter ego of Horus. (Dkt. No. 11 ¶¶ 17–21.) Defendants correctly argue that application of the alter ego doctrine does not mean that one company is liable for the acts of another company because there is really only one company—both exist as separate entities and the parent's limited liability is disregarded only to such extent as the ends of justice require in the present case. (*See* Dkt. No. 17-2 at 13 & n.55.) But if Horus is liable for GPM's contractual obligations with Simpson because GPM is an alter ego of Horus, then GPM and Horus may "collapse" into a single tier for payment bond purposes. *See United States ex rel. Glob. Bldg. Supply, Inc. v. WNH Ltd. P'ship*, 995 F.2d 515, 519 (4th Cir. 1993) (collapsing two legal entities into a single unit for Miller Act payment bond analysis is "appropriate

only where ordinary principles of corporate law permit the courts to disregard corporate forms"). Contrary to Defendants argument, proving GPM is an alter ego of Horus could move Simpson up the chain of contracts. Thus, even if sub-subcontractors are somehow excluded from suing on the payment bond for the Project, Simpson has alleged facts sufficient to state a claim on the payment bond.

The Court therefore denies the motion to dismiss as to seventh cause of action.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss (Dkt. No. 17). The Court **DISMISSES** Plaintiff's claim for injunctive relief under the amended complaint's second cause of action and **DISMISSES** Plaintiff's claims under the amended complaint's fourth and fifth causes of action. The motion to dismiss is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

February 27, 2017
Charleston, South Carolina